1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   JAMES A. BROWN, JR.,           )    NO. CV 02-5287-CT
                                    )
11              Plaintiff,          )    OPINION AND ORDER
                                    )
12              v.                  )
                                    )
13   JO ANNE B. BARNHART,           )
     COMMISSIONER, SOCIAL SECURITY  )
14   ADMINISTRATION,                )
                                    )
15              Defendant.          )
                                    )
16   _____)

17

18        For the reasons set forth below, it is ordered that plaintiff's

19   motion for summary judgment be DENIED and defendant's cross-motion for

20   summary judgment be GRANTED and judgment be entered in favor of

21   defendant Commissioner of Social Security ("the Commissioner") because

22   the Commissioner's decision is supported by substantial evidence and is

23   free from material legal error.

24                      SUMMARY OF PROCEEDINGS

25        On July 2, 2002, James Brown, Jr. ("plaintiff") filed a complaint

26   seeking judicial review of the denial of benefits by the Commissioner

27

28

pursuant to the Social Security Act ("the Act").[1]  On August 27, 2002, the parties filed a consent to proceed before the magistrate judge.

On November 18, 2002, pursuant to the parties' stipulation, the court entered an order remanding the case back to the Commissioner under sentence six of 42 U.S.C. § 405(g) so that the Commissioner could locate the claims file.  The claims file was subsequently located.  On February 1, 2006, and pursuant to the parties' stipulation, the court entered an order reopening the case.

On March 8, 2006, plaintiff filed a motion for summary judgment. On April 24, 2006, the Commissioner filed a brief in opposition to plaintiff's motion and a cross-motion for summary judgment.  On May 9, 2006 pursuant to court order that the Commissioner address certain issues, the Commissioner filed a supplemental brief addressing those issues.[2]  On May 16, 2006, plaintiff filed a reply.

SUMMARY OF ADMINISTRATIVE RECORD

1.   Proceedings

On November 22, 1999, plaintiff's father filed an application for Supplemental Security Income ("SSI") on plaintiff's behalf, alleging that plaintiff is disabled due to a learning disability.  (TR 54-56,

---

[1]   Although plaintiff was a minor at the time the action was filed, the complaint listed him as a "competent adult" and was filed in his own name rather than through a guardian ad litem.  (See Plaintiff's Not. Of Mot. at 2 n.1; Defendant's Supp. Br. at 4).  However, the passage of time has corrected the error as plaintiff is now over 18 years old.  Id.

[2]   Those issues are no longer relevant as a result of the court's decision in this Opinion and Order.

2

85).[3]  The application was denied initially and upon reconsideration.

(TR 44-46, 48-51).

On April 10, 2000, plaintiff filed a request for a hearing before

an administrative law judge ("ALJ").  (TR 52).  On February 22, 2001,

plaintiff, represented by an attorney, appeared and testified before an

ALJ.  (TR 34-38).  Plaintiff's father also testified.  (TR 29-34).  On

April 20, 2001, the ALJ issued a decision that plaintiff was not

disabled, as defined by the Act, and thus was not eligible for benefits.[4]

(TR 13-19).  On May 1, 2001, plaintiff filed a request with the Social

Security Appeals Council to review the ALJ's decision.  (TR 7).  On May

8, 2002, the request was denied.  (TR 4-5).  Accordingly, the ALJ's

decision stands as the final decision of the Commissioner.  Plaintiff

subsequently sought judicial review in this court.

2.  <u>Summary Of The Evidence</u>

The ALJ's decision is attached as an exhibit to this opinion and

order and, except as otherwise noted, materially summarizes the evidence

in the case.

<u>PLAINTIFF'S CONTENTIONS</u>

Plaintiff contends that he is entitled to benefits because his

learning disability meets Listings 112.05 (D) and (E) (mental

retardation) and that the ALJ erred in determining otherwise.

---

[3]    "TR" refers to the transcript of the record of
administrative proceedings in this case and will be followed by
the relevant page number(s) of the transcript.

[4]  Plaintiff's father filed a previous application for SSI
benefits in July of 1997.  (TR 15).  That application was denied
on February 20, 1998 and plaintiff did not appeal.  Accordingly,
the ALJ applied res judicata through February 20, 1998.  <u>See</u> 20
C.F.R. § 416.1457(c)(1).

3

1                           STANDARD OF REVIEW

2         Under 42 U.S.C. §405(g), this court reviews the Commissioner's

3    decision to determine if: (1) the Commissioner's findings are supported

4    by substantial evidence; and, (2) the Commissioner used proper legal

5    standards.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).

6    Substantial evidence means "more than a mere scintilla," Richardson v.

7    Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.

8    Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

9         When the evidence can reasonably support either affirming or

10   reversing the Commissioner's conclusion, however, the Court may not

11   substitute its judgment for that of the Commissioner.  Flaten v.

12   Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir.

13   1995).   The court has the authority to affirm, modify, or reverse the

14   Commissioner's decision "with or without remanding the cause for

15   rehearing."  42 U.S.C. §405(g).

16                              DISCUSSION

17        Plaintiff contends that the ALJ erred when she determined that

18   plaintiff's mental impairments do not meet the level of severity

19   contemplated in Listings 112.05(D) and (E).  As noted above, plaintiff

20   is now an adult, but at the time of the ALJ's decision he was still a

21   minor and the court is reviewing the Commissioner's decision denying him

22   SSI benefits as a child.  Plaintiff makes no other claims of error and,

23   consequently, this is the sole issue before this court.

24        In cases involving children, if the ALJ concludes that a

25   plaintiff's impairment is "severe" within the meaning of the Act, then

26   the ALJ must determine whether the plaintiff's impairments meet,

27   medically equal or functionally equal a listed impairment in Appendix 1

28                                    4

of subpart P, part 404 of the Code of Federal Regulations ("CFR").  20 C.F.R. § 416 (a),(d); <u>Howard v. Barnhart</u>, 341 F.3d 1006, 1011 (9th Cir. 2003)(applying 1997 Interim Final Rules for Determining Disability for a Child under Age 18).  If a plaintiff's impairment meets, medically equals or functionally equals a listed impairment, then the plaintiff will be found disabled.  20 C.F.R. § 416 (a).  If not, or if the impairment does not meet the durational requirement, then the plaintiff will be found not disabled.  <u>Id</u>.

The plaintiff's impairment will medically equal a listed impairment "if the medical findings are at least equal in severity and duration to the listed findings."  20 C.F.R. § 416.926(a); <u>Howard v. Barnhart</u>, 341 F.3d at 1012.  To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment.  20 C.F.R. § 416.926(a).  The decision is based *solely on the medical evidence*, which must be supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 416.926(b).

Here, the ALJ determined that "the evidence does not demonstrate that [plaintiff's learning disorder] meets or equals in severity to those contained in the Listing of Impairments found in Appendix 1 to Subpart P, Regulations No. 4."  (TR 15).  Plaintiff contends that this finding is error and that the evidence shows that he has a mental impairment that meets the criteria of Listings 112.05(D) and (E).

To meet a listed impairment, a plaintiff must show that his impairment meets all of the specified medical criteria.  <u>Sullivan v. Zelby</u>, 493 U.S. 521, 530 (1990).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  <u>Id</u>.

5

Listing 112.05 concerns mental retardation in children. The diagnostic description in the introductory paragraph states that mental retardation that meets this level of severity is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. pt. 404, subpt. P, App. 1, § 112.05. In addition, the required severity for this disorder is met when the requirements in any one of six subsections ((A), (B), (C), (D), (E), or (F)) are met. Id.

In order to meet the listing criteria for mental retardation in children, plaintiff must demonstrate that he satisfies both the diagnostic description in the introductory paragraph of section 112.05 and any one of the six set of criteria. 20 C.F.R. pt. 404, subpt. P, App. 1, § 112.00(A).[5]

Plaintiff was examined and assessed consultatively on January 10, 2000 by Param Saroya, PhD., who administered the Weschler Intelligence

_____

[5]   Section 112.00(a) was revised in 2001 to clarify that plaintiffs must meet *both* the diagnostic criteria *and* one of the six sets of criteria to meet Listing 112.05. The prior version was less clear that these were two separate requirements. See Blakes v. Barnhart, 331 F.3d 565, 570(7th Cir. 2003)(holding that under the prior version, "the regulations did not require that a [plaintiff] meet the diagnostic definition of the listing as well as one of the six sets of criteria" and that the revisions "introduced a new, dual requirement" that a plaintiff meet both); but see Social Security Administration Acquiescence Ruling 03-1(7)(2003)(acquiescing to the application of the Seventh Circuit interpretation of the pre-2001 regulations for cases within the Seventh Circuit, but maintaining that the regulations were always intended to require proof that plaintiff meets *both* the diagnostic description *and* one of the six criteria). The new version of the rules became effective on September 20, 2000, (see 65 F.R. 50746. *50746 (2000)), and was in effect at the time plaintiff had his hearing before the ALJ on February 22, 2001 and the ALJ rendered her decision on April 20, 2001.

Scale for Children III.  Plaintiff's test results were the following:
Verbal Scale IQ = 65, Performance Scale IQ - 86 and Full Scale IQ = 73.
(TR 260).  This is the only IQ test of record within two years of the
ALJ's decision and is therefore the only test result that is
sufficiently current to be considered valid.  See 20 C.F.R. pt. 404,
subpt. P, App. 1, Listing 112.00(D)(10)(I.Q. results of over 40 obtained
when the child is between the ages of 7 and 16 years are considered
valid for two years).  Accordingly, the record reflects that
petitioner's lowest relevant test score is a verbal IQ of 65.

Plaintiff asserts that the records show that he meets the
requirements of Listing 112.05(D) and (E).  Both subsections require
that a plaintiff have "a valid verbal, performance, or full scale IQ of
60 through 70."[6]  Plaintiff argues that Dr. Saroya's test results
demonstrate that plaintiff's verbal IQ score meets the IQ criteria of
Listings 112.05(D) and (E).

However, as plaintiff essentially concedes in his reply brief,
plaintiff's I.Q. test scores alone are insufficient to meet Listing
112.05.  Plaintiff must also show that he meets the requirements of the
diagnostic description of mental retardation in the introductory
paragraph of Listing 112.05, i.e., that he has been diagnosed with
mental retardation "[c]haracterized by significantly subaverage general
intellectual functioning with deficits in adaptive functioning."  See 20
C.F.R. pt. 404, subpt. P, App. 1, § 112.05.

---

[6] For the purpose of determining IQ under the Listings for
mental disorders in children, in cases where verbal, performance
and full scale IQs are provided in the Weschler series, the
lowest of these IQ scores is used.  20 C.F.R. pt. 404, subpt. P,
App. 1, Listing 112.00(D)(9).

The ALJ concluded that plaintiff's record of intelligence testing showed "borderline [functioning] which is not consistently at listing level." (TR 18).  Substantial evidence supports this finding.  The record contains no diagnosis of mental retardation.  On the contrary, despite plaintiff's lower verbal IQ test score, Dr. Saroya opined that plaintiff was functioning in the borderline range of intellectual classification and gave him a diagnosis of Borderline Intellectual Functioning.  (TR 260).  This diagnosis is consistent with that of plaintiff's treating psychologists who administered intelligence tests to plaintiff in prior years.[7]  (See TR 253, 255 (noting that plaintiff does not meet the criteria for mental retardation and tested at low average to borderline functioning)).  This diagnosis is also consistent with plaintiff's school records, which indicate that although plaintiff was in a special education program, he was functioning in the low average to average cognitive levels (TR 80), and making some progress in school. (TR 130).

In addition, plaintiff's records were reviewed by the State Agency psychiatrist, C. Dudley, M.D., who determined that plaintiff did not have an impairment that met or equaled a listed impairment. (TR  137). Dr. Dudley's finding is consistent with the findings of the other psychologists who examined plaintiff discussed above, and is substantial evidence supporting the ALJ's decision.  See Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999)(opinions of nonexamining physicians "may serve

---

[7]   Plaintiff's previous IQ scores, obtained when plaintiff was tested at Harbor-UCLA Medical Center in 1995 (TR 246, 248), were slightly higher than the those obtained by Dr. Saroya (TR 260), but those test scores are not current enough to meet the requirements of Listing 112.00(D)(10).

1  as substantial evidence when they are supported by other evidence in the

2  record and are consistent with it").

3      In his reply, plaintiff argues that an actual clinical diagnosis of

4  mental retardation is not required to meet the requirements of the

5  diagnostic description in the introductory paragraph of Listing 112.05.

6  Instead, plaintiff argues that he need only show that he has

7  "significantly subaverage general intellectual functioning with deficits

8  in adaptive functioning." (Reply at 4). However, plaintiff points to

9  no evidence that his learning disability meets this diagnostic

10 description in the introductory paragraph other than his one low verbal

11 I.Q. test score. Plaintiff's implied argument that an IQ test score

12 alone can demonstrate that plaintiff meets the diagnostic definition

13 directly contradicts Listing 112.00's requirement that he demonstrate

14 both the specified IQ and the findings in the diagnostic description.

15     Moreover, although a medical diagnosis alone is insufficient to

16 meet the Listings, plaintiff has the burden of proving that he has a

17 medically determinable impairment that meets the Listings based on

18 acceptable medical evidence, which would include a diagnosis of the

19 condition from a medically acceptable source. See 20 C.F.R. §§ 416.913;

20 416.925(c),(d); 20 C.F.R. pt. 404, subpt. P, App. 1, Listing

21 112.00(A),(B),(D); see also Burch v. Barnhart, 400 F.3d 676, 683 (9th

22 Cir. 2005)(plaintiff "bears the burden of proving . . . [he] has an

23 impairment listed in Appendix 1 of the Commissioner's regulations").

24 Plaintiff does not identify any diagnosis of mental retardation from a

25 medically acceptable source in the record. On the contrary, as

26 discussed above, Dr. Saroya, using the diagnostic criteria in the

27 Diagnostic and Statistical Manual of Mental Disorders, diagnosed

28

plaintiff with Borderline Intellectual Functioning, which is a diagnosis *distinct* from mental retardation. <u>Compare</u> American Psychiatric Ass'n., <u>Diagnostic and Statistical Manual of Mental Disorders</u> 41 (4th ed., Text Revision 2000 ("DSM-IV-TR"))(Mental Retardation: "the essential feature of mental retardation is significantly subaverage general intellectual functioning . . . accompanied by significant limitations in adaptive functioning") <u>with</u> DSM-IV-TR at 740 (Borderline Intellectual Functioning).

In sum, the ALJ's finding that plaintiff does not meet or equal Listings 112.05(D) or (E) is supported by substantial evidence and free from material legal error.

CONCLUSION

If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d at 1457.

After careful consideration of the record as a whole, the magistrate judge concludes that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Accordingly, it is ordered that plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion for summary judgment be **GRANTED**, and that judgment be entered in favor of the Commissioner.

This opinion constitutes the court's findings of fact and conclusions of law.

DATED: May 22, 2006

/ S /
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

10